UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| DAKOTA C. REYNOLDS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 4:17-cv-0065-TAB-TWP |
| | ) | |
| NANCY A. BERRYHILL, ACTING | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER ON PLAINTIFF'S BRIEF IN SUPPORT OF
REQUEST FOR JUDICIAL REVIEW**

**I.  Introduction**

Plaintiff Dakota C. Reynolds appeals the Commissioner's denial of her application for

Social Security benefits.  She asserts that the ALJ erred at step 2 of the sequential analysis in

failing to analyze her fibromyalgia.  The Court agrees and therefore grants Reynolds' request for

a remand under sentence four of 42 U.S.C. § 405(g) for further consideration.

Reynolds also argues the ALJ erred in failing to follow the special technique in assessing

her mental impairments and erred in determining her residual functional capacity.  The ALJ did

not apply the special technique when evaluating Reynolds' claim under the adult disability

standards, so he should do so on remand.  Once he considers Reynolds' fibromyalgia and

reassesses her mental limitations, he will need to reconsider her residual functional capacity.

**II.  Background**

Reynolds filed an application for supplemental security income on July 9, 2013, alleging

disability beginning on January 1, 2010, due to several conditions including scoliosis, ADHD,

anxiety disorder, bipolar disorder, and depression.  [Filing No. 11-6 at ECF p. 15.]  Reynolds

was under the age of 18 when the application was filed and reached that age before the date of the decision on her application. Thus, the issues before the ALJ were whether she was disabled under the Social Security Act for the period before age 18 and whether she is disabled under the Act for the period beginning at age 18. For purposes of this appeal, however, Reynolds asserts error only with respect to the adult disability evaluation, and the Court does the same.

At step one, the ALJ found that Reynolds has not engaged in substantial gainful activity since the application date. [Filing No. 11-2 at ECF p. 25.] At step two, he identified her severe impairments as degenerative disc disease of the lumbar spine, bipolar disorder, and anxiety. [*Id.* at ECF p. 26.] At step three, the ALJ decided that Reynolds does not have any impairment or combination of impairments that meets or equals a listing. [*Id.* at ECF p. 32.]

Next, the ALJ assessed Reynolds' residual functional capacity, finding her capable of performing a restricted range of sedentary work. Among other restrictions, he limited her to lifting and carrying 10 pounds occasionally and 5 pounds frequently, standing and walking no more than 2 hours in and 8 hour workday, and sitting no more than 6 hours of an 8 hour workday, with a sit/stand option every 30 minutes. The ALJ also restricted Reynolds to "simple, routine, 1-2 step job tasks with little change in the work routine from day to day and only occasional superficial contact or interaction with coworkers and supervisors and avoidance of interaction with the general public." [Filing No. 11-2 at ECF p. 33.] Reynolds had no past relevant work, so the ALJ proceeded to step five where he found, based on her age, education, work experience, and residual functional capacity, she was able to perform work that exists in significant numbers in the national economy. [*Id.* at ECF pp. 35-36.] He therefore decided that she was not disabled under the Social Security Act. [*Id.* at ECF p. 36.] The Appeals Council denied review, and this appeal followed.

### III. Standard of Review

The Court must affirm the ALJ's decision if it is supported by substantial evidence and applies the correct legal standard. *See Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017). An ALJ may not ignore an entire line of evidence that is contrary to his findings. Rather, he must articulate at some minimal level his analysis of the evidence to permit an informed review. *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001).

### IV. Discussion

Reynolds contends that the ALJ erred in failing to properly analyze her fibromyalgia. She is correct: the ALJ wholly failed to address the evidence of Reynolds' fibromyalgia. The Commissioner argues that the evidence does not support a finding that Reynolds had "severe" fibromyalgia.[1] But in doing so, the Commissioner relies on evidence not relied on by the ALJ and fashions her own analysis of the evidence. This violates the *Chenery* doctrine. *See, e.g.*, *Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010) (emphasizing that the Commissioner violates the *Chenery* doctrine when she defends the ALJ's decision on grounds that the ALJ has not embraced) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 87-88 (1943)). The ALJ wholly failed to acknowledge the evidence of Reynolds' fibromyalgia. Thus, the Commissioner's observations about the evidence will not be considered as a basis to affirm the ALJ's decision.[2]

---

[1] The Commissioner claims Reynolds cites a treatment note that simply refers to a history of fibromyalgia rather than a diagnosis of fibromyalgia, and Dr. Willage merely listed fibromyalgia in Reynolds' history. Both claims are inaccurate. Reynolds was, in fact, diagnosed with fibromyalgia both by Dr. Kijewski in February 2014 [Filing No. 11-11 at ECF pp. 64-66] and by Dr. Willage during his December 2013 consultative exam. [Filing No. 11-9 at ECF pp. 42-53.]

[2] The Commissioner notes the state agency physicians reviewed Reynolds' medical records in December 2013 and March 2014 and found she could perform work at the medium level of exertion. However, it does not appear that either physician reviewed the medical records from February 2014 and thereafter. Even if they had, they made no mention of the fibromyalgia diagnosis. Nor did they mention Dr. Willage's diagnosis or opinion that Reynolds' fibromyalgia would cause her significant impairment. (Filing No. 11-3 at ECF p. 11, 27). Their opinions

The evidence of Reynolds' fibromyalgia includes the following: During a December 2013 consultative exam with Mark Willage, M.D., Reynolds reported she has a "chronic ache all over" and at times the pain is "unbearable." [Filing No. 11-9 at ECF p. 53]. On examining Reynolds' upper and lower extremities, Dr. Willage noted "[t]en of possible tender points." [*Id.* at ECF p. 47]. His diagnoses included fibromyalgia and possible chronic fatigue syndrome and he noted that these conditions "cause [Reynolds] significant impairment." [*Id.* at ECF p. 53]. He also noted that Reynolds reported she had been previously diagnosed with fibromyalgia and likely chronic fatigue syndrome within the last two months.

Then in February 2014, Reynolds consulted with Konrad R. Kijewski, M.D., for pain management on referral from her treating physician. She reported pain in her head, neck, bilateral shoulders, upper back, mid back, and low back. [Filing No. 11-11 at ECF p. 64]. She stated that the pain was aching and constant, worsened with physical activity, and has increased since its inception. [*Id.*] On exam, Dr. Kijewski noted Reynolds had moderate tenderness in her neck, mild tenderness in her thoracic spine area, moderate to severe pain in her lumbar spine area, tenderness in her paraspinal muscles and sacroiliac joints, and multiple fibromyalgia points. [Filing No. 11-11 at ECF p. 66]. He assessed myalgia/myositis NOS, fibromyalgia, and anxiety, and prescribed Lyrica, which is used to treat fibromyalgia. [*Id.*] At treatment visits in subsequent months, Reynolds received a series of cervical and lumbar trigger point injections and was again prescribed Lyrica. [Filing No. 11-11 at ECF p. 22]. She reported some improvement with treatment and her Lyrica was increased. [*Id.* at ECF p. 5]. In addition, at the hearing, Reynolds testified to having widespread pain.

---

could easily change with consideration of the additional and more recent medical evidence of Reynolds' fibromyalgia and treatment.

Therefore, as Reynolds argues, the evidence would support a finding that she meets the criteria for establishing a medically determinable impairment of fibromyalgia under Social Security Ruling 12-2p.  She has a history of widespread pain [*see, e.g.*, Filing No. 11-7 at ECF p. 261] and she has repeated manifestations of six or more fibromyalgia symptoms, signs, or co-occurring symptoms, including fatigue, cognitive or memory problems, depression, anxiety, headache, numbness or tingling, and dizziness/light-headedness.  [*See, e.g.*, Filing No. 11-2 at ECF 63 and 74-75; Filing No. 11-9 at ECF p. 439-40 and 489; Filing No. 11-11 at ECF p. 66].  While the evidence that other disorders which could cause such symptoms have been excluded may be less clear, there is enough evidence to require the ALJ to consider and address whether Reynolds has a medically determinable severe impairment of fibromyalgia.

The Court finds the ALJ erred in failing to consider and properly analyze the evidence of Reynolds' fibromyalgia.  This error requires a remand for further consideration.  *See Parker*, 597 F.3d at 921 (stating "we cannot uphold an administrative decision that fails to mention highly pertinent evidence").

Reynolds also contends that in assessing her mental impairments, the ALJ failed to follow the special technique provided in 20 C.F.R. § 416.920a.  She is correct: he did not apply the special technique.  However, "[u]nder some circumstances, the failure to explicitly use the special technique may … be harmless error."  *Craft v. Astrue*, 539 F.3d 668, 675 (7th Cir. 2008).  The Commissioner responds that the failure to apply the special technique was harmless because the ALJ did find that Reynolds has severe mental impairments (bipolar disorder and anxiety) and evaluated them under the childhood disability standards.  The ALJ did assess Reynolds' functional limitations under the six child domains in 20 C.F.R. § 416.926a(b)(1) (acquiring and using information, attending and completing tasks, interacting and relating with others, moving

about and manipulating objects, caring for yourself, health and physical well-being). Some overlap exists between those domains and the four broad functional areas assessed under the special technique. See 20 C.F.R. § 416.920a(c)(3) (activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation). But there are enough differences that an assessment under the childhood domains cannot easily or necessarily be translated into an assessment under the adult functional areas.

Furthermore, in assessing Reynolds' functional limitations in the six domains, the ALJ was considering her functioning before attaining the age of 18. Although Reynolds testified at the hearing that her mental health was "more stable" at that time as compared to when she was younger [Filing No. 11-2 at ECF p. 49], she also said she still has problems that affect her memory and ability to concentrate, order her thoughts, and complete tasks. [*Id.* at ECF p. 49-50]. Moreover, Reynolds was not diagnosed with fibromyalgia until after she turned 18, and the record does not reflect that proper consideration was given to her fibromyalgia or its symptoms and their limiting effects on her physical and mental abilities and her ability to work. The Social Security Ruling that provides guidance on the evaluation of fibromyalgia states: "People with [fibromyalgia] may also have nonexertional physical or mental limitations because of their pain and other symptoms." SSR 12-2p. Since consideration wat not given to Reynolds' fibromyalgia, the ALJ should reevaluate her mental impairments, using the special technique and accounting for all limitations (physical and mental) due to her fibromyalgia. Further consideration of the evidence may affect the ALJ's residual functional capacity finding.

In his decision, the ALJ noted that the psychological consultant did not opine as to Reynolds' limitations in her ability to attend and concentrate, perform tasks, or work with others.

On remand, the ALJ is encouraged to recontact the consultant or otherwise obtain expert medical evidence regarding Reynolds' mental limitations.

Reynolds raises other issues, but they do not require discussion, especially since the case has to be remanded for further consideration.

## IV. Conclusion

For the stated reasons, the Commissioner's decision is remanded under sentence four of 42 U.S.C. §405(g) for further consideration consistent with this opinion.

Dated:  12/28/2017

_____

Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Electronic Distribution to All Counsel of Record